Okay, our third case of the morning is Appeal Number 22-2516, Adebiyi v. South Suburban College. And, Mr. Brand, good morning. Good morning. Can I place the court? Absolutely. Go right ahead. My name is Volney Brand, counsel for the appellant, Ms. Sanjay Adebiyi, and one of the central questions before the lower court was whether or not there was a causal connection between the protected activity she engaged in and her ultimate termination. The district court erred when it found that there was no reasonable jury could agree that there was such a causal connection and took that decision away from the jury. Ms. Adebiyi presented evidence, the record will show, that the timing of her termination was in fact suspicious as defined by the circuit. Specifically, she was fired within three days of an Illinois Department of Human Rights pending meeting where she was to discuss discrimination and retaliation that she had suffered at the hands of her employer, South Suburban College, and her president, Donald Manning. Mr. Brand, I'm glad that's where you took the argument here, but I think that's her best fact if there was more, so I think you're right to emphasize it, but what do we know about the meeting, who attended, what was on the agenda, what transpired, et cetera? Well, what we know is at least as late as November 2018, the supervisor who in fact recommended that she be fired was aware of a complaint that had been filed with that agency regarding discrimination and retaliation. And so just prior to the meeting that you just mentioned, she received an evaluation from the supervisor where she received a meets expectations January 18, 2019. She was fired less than a month later for failing to meet job expectations, basically. And so when you couple those together, we can construe the inferences in favor of the non-moving party as required under the law. It's clear that- Yeah. I think it's fair to say you can infer that the meeting related to the complaint. Correct. Right? Because why would the Illinois Department of Human Rights just randomly show up for a meeting? So that's fair. You can connect it to the prior complaint, but don't you need to know more than that? Well, I think that the inferences, and that's why I think in this case the inferences are very important, the inferences, if drawn in favor of Ms. Adebaye, is that they were connected primarily because she had just received a meets expectations in her job performance January 18, 2019, and just prior to participating in this meeting with her employer, she was terminated. And so a reasonable jury could find that the two were related. And let me ask you this. What was the causal connection? You know, the complaint had been pending since Manning was president. But would this IDHR meeting in February 2019 have been Stokes' first meeting, the first meeting to take place under Stokes' leadership? Correct. Okay. And at that meeting, again, obviously she had made complaints about the university and her treatment there. And so- Does the record establish that Stokes, do we know for sure that Stokes was present at the meeting? Actually, I don't think the record- In the discovery record, could we look and see? There's no question Stokes attended the meeting. Where's that at in the record? I don't believe the record specified that, largely because of the reasons the defendants presented in their motion for summary judgment as to why there was no retaliation. So, for example, they simply said that because an employer has a right to demand a very high standard, let's say an exceeds satisfaction on a job evaluation, that that alone kind of circumvented this retaliation claim. And our response was, we don't deny that an employer has a right to demand an exceeds satisfaction. The issue was the supervisor switched completely from January 18th, where she's saying that she met these expectations, and then relied on issues that predated her tenure under Donald Manning, where she's specifying certain deficiencies occurred. And so when you look at the timing of the participation of the meetings and the parties involved, and the fact that Stokes undoubtedly was noticed of the complaint that was filed, a reasonable jury could look at the array of evidence and find that there was retaliation. It seems to me some of the things that Stokes pointed to happened under Stokes' tenure. Is your position that nothing happened under Stokes' tenure that Stokes could actually point to and have personal experience with? I know that there was an issue with the communication pathway, for example, chart, but I believe that arose July, August of 2018. And I know it arose prior to her evaluation, where she's saying that she met expectations, which is the critical issue here. But outside of that, I don't recall any of those issues, quote unquote, performance-based issues arising under her independently. And in fact, because most of them arose, even though most of them arose under Donald Manning, it's interesting that he even testified in his deposition that he had no issues with her performance. And so given these facts, as well as in the declaration where Stokes is pointing out additional contradictory positions that was taken by, excuse me, Adebaye was pointing out additional contradictions that was taken by Stokes, again, we contend that the jury should have made the determination. And- Mr., can I ask you one? You might have asked you one more question, and you can save some time. One of the aspects that made the review of this difficult for me is when you try to look at what's disputed and what's not disputed, the district court made some observations at the outset of its opinion about what it saw as being violations of the Rule 56.1 requirement with respect to the way the respective statement of facts were put together. And the district court said that your client really just didn't comply with the rule. And so there are many, many aspects of the versions of fact, or the statement of facts that the district court lays out that are probably quite contrary to your client's view of what happened. But because your client didn't properly comply with the 56.1 requirement, that's what the district court was doing. Are you challenging any aspect of that on appeal? Well, I would, simply because I don't believe the defendants raised that argument. But more importantly, the facts, the district court actually included in its summary the critical facts that are necessary to warrant the reversal of this decision. So for example, the district court recognized and accepted this fact that the meets expectations was in the record, and then defendants switched to you need an exceeds after the fact, which is a critical point. And so when you look at the critical evidence that, you know, between the timing as well as the contradictions in positions, for example, with Stokes, that alone we contend would be enough to raise an inference of causation. Okay, very well. You want to save the remainder? Yes, Your Honor. Okay, good. Is it Ms. Brooke? Ms. Brooke. Good morning. Good morning. May it please the court. Julie Brooke on behalf of the defendants, South Suburban College, and former President Donald Manning. The district court properly concluded that the defendants were entitled to summary judgment on the Title VII retaliation claim. Under the but-for standard, the issue is whether or not the existence of this meeting that was to take place in February of 2020 would have caused her termination. And in fact, there is no evidence in the record to support that argument. As this court has repeatedly stated, suspicions- I'm wondering how much more do we actually need under our case law. If what Ms. Adebaye is saying is there was a meeting scheduled, and we can all agree the meeting was about her complaints of discrimination, and then we draw inferences in her favor, what more do we actually need to know about the meeting if the termination takes place a day or two before? The most important factor that this court needs to know is, in fact, whether or not Dr. Stokes was aware of the meeting, was aware of the reasons that the meeting was going to take place, and was even going to be attending the meeting. And in fact, as someone- If she's president of the college, does she need to be at the meeting? And if she's president of the college and had been handed a file as early as November, you know, can't we infer she knew that one of her only, what, five vice presidents had a pending discrimination case? It's a small college. Your Honor, there is no dispute whatsoever that Dr. Stokes, when she became the president in November of the year before, was aware that Ms. Adebaye had filed a charge of discrimination. But in fact, was she aware of the day-to-day minutiae of what was going on in that charge of discrimination? The record doesn't say. I can tell you, as someone who was present at that meeting, that Dr. Stokes was not at the meeting, and did she have knowledge of the meeting? I honestly don't know. It's certainly, no evidence is in the record. Now- Is that where we would need to then draw an inference, not in the college's favor, but in Ms. Adebaye's favor, and if not, why not? Because under the law, the college has to provide a legitimate non-discriminatory reason for its employment decision. And in this situation, they have provided a declaration from Dr. Stokes in which she's provided a laundry list of all of the reasons why she recommended to the board that Ms. Adebaye's contract not be renewed. The reason for that timing is because the contracts are renewed in June of that year. So procedurally, the board of trustees needs to vote in February as to whether or not they're going to be offering candidates contract renewals. So at this time, Dr. Stokes recommended that both Ms. Adebaye and another employee of the college not have their contracts renewed. So that is the reason why that happened at that time. Now, the burden now shifts to Ms. Adebaye to prove that that was not Dr. Stokes' motivation, that the real motivation behind her decision was a desire to retaliate against Ms. Adebaye. And under that scenario, Ms. Adebaye has failed to meet her burden because she has not presented any evidence to the court, and the district court was correct that there was no basis for any court to determine that Dr. Stokes would have appreciated any significance to this meeting whatsoever. So simply based on the fact that she had a pending charge of discrimination, is an employee now immune from any adverse employment action simply because they filed an action? Absolutely not. This court has said on numerous occasions that employees who commit misconduct, even while there's pending charge, can still be terminated. And that's what happened in this instance. What is your response to Mr. Brand's argument that many of the things Dr. Stokes pointed to that she was dissatisfied with happened before she gave her the rating meets expectations and her explanation that I now want my vice chancellors to exceed expectations happened after the meets expectations rating? So if you look at the declaration of Dr. Stokes, she identifies how she had numerous meetings with Dr. Stokes leading up to the recommendation to terminate her employment or to not renew it. So there was constant communication between Dr. Stokes and Ms. Adebaye about her performance. So Ms. Adebaye would have known that Dr. Stokes did not believe she was performing up to the standards required of supervisors that are at the vice president level. Is it possible and permissible under this court to treat supervisors to that higher standard? Absolutely. In Title VII cases, when we're talking about sexual harassment, it's common that this court holds a supervisor to more of a vicarious liability, a strict liability, as opposed to the regular employee who was held to a negligent standard. When you have situations where there is racial harassment, if the racial harassment is committed by a supervisor as opposed to a regular employee, they can be held to a higher standard. So essentially what this court is telling people like Dr. Stokes is that yes, you can hold your vice presidents to higher standards, and simply meeting expectations is not enough, and that is something that you can decide that we're not going to recommend a renewal of a contract because you're simply not performing good enough. You're performing adequately, but you're not performing good enough. I mean, I think that situation happens all the time with the professional sports team where you have the coach of the team or you have a player who is adequate and they're doing okay, but in the minds of the organization, they expect a lot more performance-wise from their coaches and players to justify the higher salaries. It's the same situation here. So based on that, there's really nothing that this court can go to that's present in the court. The recommendation not to renew is in fact a lie, is pretextual. So essentially that is the only evidence that the plaintiff has presented on that issue. She's argued also that there is a computer forensics exam. That was not an adverse employment action. Simply having the police officers come there is not enough. She's argued that there are similarly situated employees who are treated more favorably. There's no evidence really in the record that has been developed to show that those individuals were similarly situated. Her second argument. I do have a question about that because she's pointing to a number of leaders at the school who were accused of sexual harassment who were not terminated. They are not vice chancellors like she is. They don't report to the president like she does, but again, it's a small college. They are only five, if I recall, vice chancellors. Why can she not, under our case law, point to other leaders who report to other people and her argument be beyond the realm of similar conduct, but this is more egregious conduct that was treated more leniently? What's impermissible about that as a comparison? I think that the argument itself makes sense, but if you were to look at the developed record in the evidence, you will see that Ms. Edeby made a number of accusations without actually having any foundation. She wasn't present for the decisions that occurred. She was not responsible for the investigation of the allegations, and in fact, President Manning, who was present at the time, he has said that I wasn't even involved in those decisions. A lot of these people ended up resigning beforehand, or the individual who was found to have engaged in misconduct never appealed that decision to my level, so I never even had a chance as college president to weigh in, and it's important to know that President Manning had already left the college three months before the recommendation to eliminate her position or to not renew her contract. So he would not have even weighed in on that decision itself, so simply the issue of removing her computer, which occurred under President Manning, that wasn't an adverse employment action. The only adverse employment action occurred after he'd already left. So Dr. Stokes, who was the person involved in that decision and that recommendation had absolutely nothing to do with any of the comparator evidence that Ms. Edeby has presented to this court, and so for that reason, we would request that the decision of the district court be affirmed. Thank you. Mr. Brand? Your Honor, I'd just like to add that the record is clear that Ms. Edeby was terminated based on stale evidence that was drummed up at or around the time of meetings that she had scheduled with the Illinois Department of Human Rights and following the complaints that she made against the college related to retaliation and discrimination, and based on that, along with the other evidence, for example, the comparator evidence that the Even without considering the affidavit, which on the one hand, felonies rely on the declaration, on the other, the court seemed to equivocate on whether to or whether not to, there is enough evidence in the record that this case should be decided by a jury with respect to the retaliation claim. Okay, very well. Mr. Brand, thank you. Ms. Brooke, thanks to you. The case will be taken under advisement.